JiCOOKS, Judge.
A real estate broker executed a listing agreement with the co-owners of property adjacent to and surrounding property owned by the Lake Charles Harbor & Terminal District. The broker notified the attorney representing the Board of the Lake Charles Harbor & Terminal District (Board) that the property was for sale, and the Board expressed an interest in acquiring the property. When the sellers were unwilling to accept the price offered by the Board, a petition for expropriation was filed by the Board. Eventually, the sellers settled with the Board. The broker filed suit to collect his commission after the sellers refused to pay it because their property had been the subject of an expropriation proceeding. All but two co-owners, Thomas Barr III and William R. Farley, settled with the broker before trial. Judgment was granted in the broker’s favor and Barr and Farley appeal.
FACTS
Dan Flavin, a real estate broker with Century 21 Flavin Realty, Inc., executed a listing agreement with Thomas Barr III and the other co-owners of property adjacent to property owned by the Lake Charles Harbor & Terminal District. RThe listing price for the property was $650,000. Although the termination date of the listing agreement was April 30, 1991, the agreement contained a provision that stated if the owner sold, conveyed, or otherwise transferred the property subject to the listing agreement within 180 days after the agreement terminated, Flavin was entitled to his commission.
During the term of the contract, the Board offered Flavin’s clients $495,300 for their property, based upon its most recent appraisal. This offer was rejected by the co-owners. An appraisal commissioned by the co-owners, and forwarded to the Board, reflected that the fair market value of the property was $574,500.
On October 29,1991, the 180-day provision of the listing agreement expired. The following month, on November 20,1991, the Board filed an expropriation suit against the co-owners of the property. Michael Dees, the attorney for the Board, stated the suit was filed “to keep pressure on the owners and to keep things [negotiations] moving along.” The Board subsequently filed a motion for partial summary judgment seeking to be declared the owner of the sellers’ property and contemporaneously deposited $495,300 in the court’s registry. The Board’s motion was denied. However, the Board and the co-owners subsequently settled the litigation. They then filed stipulations and secured a final judgment of expropriation providing for an additional payment of $85,700, or $580,700 total, for the property.
When Flavin demanded his commission, Barr and Farley responded he was not entitled to a commission because the Board acquired the property by expropriation litigation. Flavin filed suit seeking commission from Barr and Farley claiming they breached the listing agreement. In the alternative, he asserted entitlement to the full commission relying on the theory of “procuring cause” or ^quantum meruit. The trial court granted judgment in favor of Flavin without reasons.
DISCUSSION
Appellants note the listing agreement and its 180-day extension clause expired approximately one year before the Board acquired the property and Flavin did not seek to renew the agreement. Additionally, they ar *110 gue Flavin is not entitled to a commission because the “purchaser,” the Board, acquired the property by expropriation. We agree.
A realtor is entitled to a commission if he is the procuring cause of the sale even though the operable contract period has expired. Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983). A procuring cause is defined as:
a cause originating or setting in motion a series of events which, without break in their continuity, result in the accomplishment of the prime object of the employment of the broker, which may variously be a sale or exchange of the principal’s property, an ultimate agreement between the principal and a prospective contracting party, or the procurement of a purchaser who is ready, willing and able to buy on the principal’s terms.
Creely, 437 So.2d at 820-21.
Flavin did not produce a purchaser who was willing to buy on the principal’s terms nor are we willing to consider a settlement with a governmental entity during an expropriation proceeding an “agreement” contemplated by the definition enunciated in Creely. Dees, the attorney for the Board, testified the expropriation suit was filed “to keep pressure on” the appellants and their co-owners. Dees also directed Flavin to remove the “for sale” signs that had been posted on the property before expropriation proceedings had begun. Sellers of property subject to an expropriation proceeding are not in a tenable bargaining position. If they do not accept the price the governmental entity is offering, they must bear the cost of litigation to “negotiate” a higher price, which may not be the price they were ^demanding for the property. Expropriation also deprives a seller of the opportunity to wait for another purchaser who may be willing to pay the purchasing price. We cannot conclude a real estate broker who negotiated with a “purchaser” who expropriated the seller’s property one year after the extension clause expired in the listing agreement is entitled to a commission.
Moreover, Flavin has not referred us to any jurisprudence which supports a real estate broker’s claim for commissions based solely on the theory of quantum meruit. See Creely, supra; Brown v. Williams, 587 So.2d 732 (La.App. 2d Cir.1991); Moody v. Thibo-deaux, 495 So.2d 1328 (La.App. 3d Cir.), writ denied, 497 So.2d 1387 (La.1986). Accordingly, the trial court’s judgment is reversed. Costs are assessed to Flavin.
REVERSED.